UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                          )
MICHAEL C. RODGERS, *et al.*,             )
                                          )   No. C03-0092L
            Plaintiffs,                   )
      v.                                  )   ORDER GRANTING
                                          )   DEFENDANT'S MOTION
THE UNION PACIFIC RAILROAD                )   FOR SUMMARY JUDGMENT
COMPANY,                                  )
                                          )
            Defendant.                    )
_____)

This matter comes before the Court on "Defendant Union Pacific's Motion for Summary Judgment." Dkt. # 38. Plaintiff Michael Rodgers and his wife filed this action against his former employer alleging that defendant discriminated against him because of his race and maintained a work environment hostile to its African American employees, all in violation of the Washington Law Against Discrimination ("WLAD") and 42 U.S.C. § 1981. Plaintiffs also allege that defendant violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, negligently supervised plaintiff's co-workers, negligently and intentionally inflicted emotional distress, and wrongfully discharged plaintiff in violation of public policy.[1] Defendant

---

[1] In their opposition to defendant's motion for summary judgment (Dkt. # 46), plaintiffs argue that Mrs. Rodgers has a viable cause of action for damages against defendant for the loss of the love, care, and companionship of her husband. Plaintiffs have not asserted a claim for loss of consortium, however, and cannot raise new causes of action in their legal memorandum.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

denies these allegations and has moved for summary judgment.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy, 68 F.3d at 1221.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[2] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

---

[2] Defendant's hearsay objection to plaintiff's testimony regarding a newspaper report about racially-motivated graffiti at the Portland terminal is overruled. Racially discriminatory comments are rarely, if ever, offered for the truth of the matter asserted. The issue is whether the existence of such comments creates a hostile work environment and plaintiff's testimony has been considered for that purpose.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT           -2-

## I. Hostile Work Environment

An employer who creates or tolerates a racially abusive work environment may, in some circumstances, alter the conditions of employment for minority employees in violation of the WLAD and federal law (including both Title VII and 42 U.S.C. § 1981). See DeWater v. State, 130 Wn.2d 128, 135 (1996); Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003). To prevail on their hostile work environment claim, plaintiffs must prove that (1) Mr. Rodgers was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was so severe or pervasive as to alter the conditions of employment and create an abusive environment. Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998).[3] "The more outrageous the conduct, the less frequent must it occur to make a workplace hostile." Id. Plaintiff argues that defendant harassed him by unfairly scrutinizing his attendance record, tolerating racial epitaphs, graffiti, and symbols in the workplace, and failing to investigate or address complaints of racial harassment.[4]

Plaintiffs argue that one of Mr. Rodgers' direct supervisors, William Streety, ignored company policy by mandating "repeated 'conferences' between himself and Rodgers to discuss the alleged attendance issues." Opposition at 3. Plaintiff offers no evidence to support his claim that Streety subjected him to excessive scrutiny or repeated conferences: the testimony cited by plaintiff refers to a single conference held on October 5, 2000. Dep. of William Streety at 110:11-12. Nor has plaintiff shown that this conference violated company policy. No relevant policy was identified and, contrary to plaintiffs' assertion, Arthur Whitemen did not testify that company policy required the immediate supervisor to confer with an employee

---

[3] Under the WLAD, plaintiffs must also establish that the harassment can be imputed to his employer. See DeWater, 130 Wn.2d at 135.

[4] The "hell to pay" incident discussed at length in defendant's motion is mentioned by plaintiffs only obliquely and in relation to their claim that defendant, through Superintendent Hunt, failed to address complaints of harassment at the Seattle facility.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -3-

regarding absenteeism. All Whiteman said was that company policy required a review with the employee and, if the attendance problems continued, a follow-up letter. "Most times" Whiteman handled the conference and Streety handled the letter, but Whiteman testified that there were instances in which Streety or other employees would conduct the initial review with the employee. Dep. of Arthur Whiteman at 16:20-17:24. Even if the Court were to assume that Streety's interest in plaintiff's attendance records were racially based,[5] in the absence of any evidence that Streety's participation in plaintiff's attendance review(s) was either excessive or in violation of company policy, the review(s) did not alter the terms and conditions of plaintiff's employment.

Plaintiffs allege that defendant maintained a hostile work environment by tolerating racial epitaphs, graffiti, and symbols in the workplace. On one occasion, plaintiff found a brown doll with a noose made of toilet tissue dangling on a cork board in an employee room. Dep. of Michael Rodgers at 95:9-96:6. While offensive and distasteful in the extreme, the doll incident was an isolated event that was addressed as soon as defendant became aware of it. Dep. of Michael Rodgers at 101:5-9. There is no evidence that defendant tolerated such harassment and this single manifestation of racial hostility in the workplace did not alter the terms and conditions of Mr. Rodgers' employment. See Glasgow v. Georgia Pacific, 103 Wn.2d 401, 406 (1985) (casual, isolated, or trivial manifestations of racial hostility in the workplace do not affect the terms and conditions of employment).

Mr. Rodgers also testifies regarding epitaphs and graffiti encountered in the work place, but his testimony is ambiguous. Over the course of his twenty months at Union Pacific, it

---

[5] Plaintiffs' evidence regarding the different treatment afforded Rodgers and Geoffrey Hamill, a Caucasian co-worker, is unpersuasive. Counsel's interpretation of the Employment Status Record overstates the number of non-compensated hours that were the result of approved leaves of absence and makes no effort to reduce the glaring disparity between the compensated hours each employee marked off.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -4-

appears that he read a newspaper account of racial slurs written on building or bathroom walls at the Portland hub and saw racial slurs written on boxcars. Dep. of Michael Rodgers at 97:17-98:12; 100:6-101:9.[6]  "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discrimination conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks and citations omitted). As a matter of law, the conduct of which plaintiffs complain was not severe or pervasive enough to create a hostile work environment. Only the doll incident seems to have made any lasting impression on plaintiff: he was unable to testify with clarity or specificity about any other alleged harassment. In addition, plaintiff acknowledged that defendant cleaned the walls regularly and he is not aware of any offensive symbols or graffiti that were left in place after they were brought to defendant's attention. Dep. of Michael Rodgers at 99:23-100:5. The random graffiti seen around the workplace were not severe and pervasive and did not alter the conditions of plaintiff's employment. Nor could a report of racial graffiti at another workplace create a hostile work environment at the Seattle facility. Plaintiffs cannot, therefore, support their claim that defendant maintained or tolerated racial slurs in the workplace. Because the employer took reasonable steps to correct the harassing behavior and there is no evidence that would support the imputation of such behavior to defendant, defendant cannot be held liable for these workplace occurrences. See Faragher v. Boca Raton, 524 U.S. 775, 805-07 (1998); Glasgow, 103 Wn.2d at 407.

        Finally, plaintiffs base their hostile work environment claim on defendant's alleged failure to investigate or address complaints of racial harassment. Without citing any

---

[6] It is also possible that Mr. Rodgers saw offensive writing on one or more walls at the Seattle hub, but the discussion reverts back to the doll incident and it is unclear whether plaintiff actually saw racially-motivated graffiti on anything other than the boxcars. Dep. of Michael Rodgers at 99:23-101:9.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -5-

specific incident, plaintiffs argue that "the only thing the record does establish is that even when management was made aware of discriminatory or harassing conduct, it avoid[ed] taking any action at all until forced to do so." Opposition at 17. Plaintiffs have not identified any conduct which was (1) racially motivated, (2) brought to the attention of defendant, and (3) unremedied. As discussed above, there is no evidence that Streety's review of plaintiff's attendance problems was in any way improper, the brown doll was removed as soon as the supervisor was made aware of it, and defendant cleaned the walls of its facility so that any racial slurs or graffiti were removed.[7] Even if plaintiff were not completely satisfied with the manner in which defendant addressed certain events and occurrences, it would be impossible to conclude that such sporadic and relatively minor disputes altered the terms and conditions of plaintiff's employment.

Taking all of the statements and conduct for which there is supporting evidence into consideration, including the frequency and severity of the conduct and the effect it had on plaintiff's work environment, the Court finds that plaintiffs failed to offer evidence from which a reasonable jury could return a verdict in their favor on their hostile work environment claim.

**II. Disparate Treatment Claim**

Plaintiffs' state and federal claims of intentional discrimination are subject to the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Hill v. BCTI Fund-I, 144 Wn.2d 172, 180-81 (2001). In order to make out a *prima facie* case of unlawful employment discrimination on the basis of his race, plaintiffs may rely on indirect evidence of discriminatory intent by showing that (1) Mr. Rodgers is a member of one or more protected classes, (2) he was satisfactorily performing his job, (3) he suffered an adverse

---

[7] To the extent this portion of plaintiffs' hostile work environment claim relies on plaintiffs' objections to the manner in which Superintendent Hunt investigated the "hell to pay" incident (Opposition at 6-7), plaintiffs do not explain how a dispute regarding conflict resolution techniques could be considered verbal or physical conduct of a racial nature.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -6-

employment action, and (4) similarly situated employees who were not in the protected class were treated more favorably. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993) (citing McDonnell Douglas, 411 U.S. at 802). Plaintiffs' initial burden is to show that the employer's conduct, if left unexplained, gives rise to an inference that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978) (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977)). Plaintiff's burden in establishing a *prima facie* case is minimal and need only give rise to an inference of unlawful discrimination. If the elements of the *prima facie* showing are satisfied, plaintiffs are entitled to a presumption that the employer unlawfully discriminated against him. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

Once a *prima facie* case has been presented, the burden shifts to defendant "to articulate a legitimate nondiscriminatory reason for its employment decision." Wallis, 26 F.3d at 889 (quoting Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1985), as amended, 784 F.2d 1407 (9th Cir. 1986)). If defendant is able to rebut the presumption of discrimination raised by the *prima facie* showing, plaintiffs may avoid summary judgment by producing enough evidence to allow a reasonable factfinder to conclude either (1) that defendant's proffered reasons for the adverse employment action were false or (2) that the true reasons for the action were discriminatory in nature. Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

It is undisputed that plaintiff is a member of a protected class, that he was qualified for the position he held and the positions for which he applied, and that he suffered adverse employment actions when as he was not promoted to the Yardmaster position, not

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -7-

promoted to the hostler positions, denied a transfer, and eventually terminated. Opposition at 13.[8] The Court will assume, for purposes of this motion, that Caucasians were chosen to fill the Yardmaster and hostler positions for which plaintiff applied and that plaintiffs have made a *prima facie* showing in support of their disparate treatment claim regarding the Yardmaster position and the transfer.

Plaintiffs have not, however, established a *prima facie* case of discrimination regarding the failure to promote to the hostler position or Mr. Rodgers' termination because plaintiff has not shown that similarly situated employees outside the protected class were treated more favorably. At his deposition, Mr. Rodgers acknowledged that both of the Caucasian employees who obtained hostler positions before him had taken the necessary exam whereas he had not. Dep. of Michael Rodgers at 65:19-66:8; 71:14-72:1. The Caucasian employees were not, therefore, similarly situated with regards to the hostler promotion: plaintiff was ineligible for the promotion until he took the exam, at which point there were no hostler positions open.[9] With regards to plaintiffs' claim that his absences were treated more harshly than those of a similarly-situated Caucasian co-worker, the employment records submitted by the parties show that plaintiff marked off far more compensated and uncompensated time than Geoffrey Hamill, plaintiffs' chosen comparator. In their sur-reply, plaintiffs argue that certain uncompensated

---

[8] In the argument section of their brief, plaintiffs also list the scrutinization of Mr. Rodgers' attendance record and the failure to warn plaintiff of the upcoming hostler exam as additional instances of disparate treatment. Opposition at 13-14. No adverse employment action is alleged to have arisen from these two occurrences, however. To the extent plaintiff's termination was related to his absences, it is considered separately. With regards to the lack of notice regarding the hostler exam, it is undisputed that plaintiff passed the surprise exam on his first attempt.

[9] Plaintiffs have not alleged that plaintiff was denied an earlier opportunity to take the hostler exam because of his race. Rather, the evidence shows that Hank Saathof, one of the people who administered these tests, was having trouble getting people to take the hostler test and ended up having to "catch" employees in the workplace and ask them to sit for the exam. Dep. of William Saathof at 8:4-9:18; 17:16-18:10.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT         -8-

time should be excluded from Mr. Rodgers' tallies because plaintiff was on a leave of absence. Plaintiffs provide no evidence to support counsel's claim that certain marked off hours were the result of workplace injuries or that all hours missed because of such injuries are excluded from consideration under company attendance policies. Even if plaintiff's leave of absence from 8/30/99 to 9/20/99 and his "layoff hurt" from 10/30/99 to 11/23/99 are deducted from the totals, Mr. Rodgers marked off approximately 92 days (11.75 uncompensated days and 80.85 compensated days) more than Hamill during the relevant time period. Plaintiffs have not, therefore, raised a *prima facie* case of discrimination with regards to Mr. Rodgers' inability to obtain a hostler position or his termination for absenteeism.

As discussed above, plaintiffs' *prima facie* showing entitles them to a presumption that the employer unlawfully discriminated against Mr. Rodgers by denying him the Yardmaster position and a transfer. Defendant, however, has come forward with legitimate, non-discriminatory reasons for each of the adverse employment decisions. Streety has testified that, regardless of plaintiff's abilities, he was not a good candidate for the Yardmaster position because he was requesting a transfer out of the Seattle hub and his frequent absences made him unreliable for such an important position. Dep. of William Streety at 79:18-80:1; 108:8-109:13. With regards to the requested transfer, plaintiff failed to complete the intra-company approval process set forth in Superintendent Hunt's letter dated March 27, 2000. Decl. of George Kargianis, Ex. 11. Plaintiff asserts that he could not obtain the necessary approvals because Streety refused to assent to the transfer. Streety's approval was not required, however, and there is no evidence that defendant ever told plaintiff that he had to obtain Streety's approval.[10]

Under the shifting burdens of McDonnell Douglas, the presumption drops out of

---

[10] Plaintiffs' counsel's assertion that the CMS director of the Seattle yard "indicated to Rodgers that he would also have to obtain Streety's approval before the transfer could be finalized" (Opposition at 5-6) is completely unsupported by the evidence and is contrary to Superintendent Hunt's letter and CMS director Caldwell's testimony.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -9-

the case at this point and plaintiffs must come forward with enough evidence to allow a reasonable factfinder to conclude either (1) that defendant's proffered reasons for the adverse employment actions were false or (2) that the true reasons for the action were discriminatory in nature.  In response to defendant's non-discriminatory justifications for the adverse employment actions, plaintiffs simply allege that Streety disliked plaintiff because of his race and that this dislike thwarted his promotion and transfer attempts.  Plaintiffs have not shown that Streety's concerns regarding the impact Mr. Rodgers' requested transfer and absences would have on his ability to perform in the Yardmaster position were unfounded or mere pretext.  Nor have plaintiffs shown that Mr. Rodgers completed the transfer approval process as set forth in Superintendent Hunt's letter.  Plaintiffs' subjective and unsupported belief that race played a role in these decisions is insufficient to allow a reasonable factfinder to conclude that defendant's legitimate, non-discriminatory business justifications for failing to promote plaintiff to the Yardmaster position and/or transfer plaintiff to Chicago were a pretext for discrimination or that race played any role in defendant's actions.  Plaintiffs' claim of intentional race discrimination therefore fails as a matter of law.

**III. Wrongful Discharge in Violation of Public Policy**

Plaintiffs argue that Mr. Rodgers' discharge was in contravention of a clear mandate of public policy.  Where, as here, a plaintiff alleges wrongful termination in violation of the public policy against discrimination, his claim necessarily fails if he is unable to produce sufficient evidence to establish discrimination.  Grimwood v. Univ. of Puget Sound, 110 Wn.2d 355, 367 (1988).  Having concluded that plaintiffs' discrimination claims fail as a matter of law, their wrongful termination claim will also be dismissed.

ORDER GRANTING  DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -10-

**IV.  Negligent Supervision**

Plaintiffs allege that defendant's negligent supervision of its employees allowed the existence and continuation of a hostile work environment.  Having found that plaintiffs' discrimination claims fail as a matter of law, the defendant employer's supervision cannot be said to have been negligent.

**V.  Family Medical Leave Act ("FMLA") Claim, 29 U.S.C. § 2601 *et seq*.**

Under the FMLA, employees are entitled to take up to twelve weeks of leave each year to address their own or a family member's serious health condition.  29 U.S.C. § 2612(a)(1).  The employer may not consider absences that are covered by the FMLA as a "negative factor" in any subsequent employment decisions.  29 C.F.R. § 825.220(c).

> While employees must notify their employers in advance if they plan to take foreseeable leave for reasons covered by the Act, they need not expressly assert their FMLA rights or even mention the FMLA.  Rather, the employer bears the responsibility of determining whether an employee's leave request is covered by the Act and must notify the employee accordingly.  If the employer lacks sufficient information to determine whether an employee's leave . . . qualifies under the FMLA, the employer should inquire further in order to ascertain whether the FMLA applies.

Bailey v. Southwest Gas Co., 275 F.3d 1181, 1185 (9th Cir. 2002).  If, for purposes of satisfying its inquiry obligations under the FMLA, the employer requires the employee to submit a medical certification of disability or other documentation, the employer must provide written notice of such requirements.  29 C.F.R. § 825.301(b)(1)(ii).

It is undisputed that plaintiff was terminated as a result of his absences.  The primary issue is whether plaintiff's absences were FMLA-protected: if they were, plaintiff's dismissal for absences covered by the statute would constitute interference under 29 U.S.C. § 2615(a)(1). Defendant argues that Mr. Rodgers' absences were not covered by the FMLA because (1) he expressly disavowed any intent to use FMLA leave and (2) he did not provide the

ORDER GRANTING  DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT            -11-

medical certification requested by his employer.

Defendant maintains that Mr. Rodgers stated that he "did not want a Family Medical Leave" and "wanted a personal leave due to family emergency." Decl. of Ralph Pond, Ex. N.  If proven at trial, such an express disavowal of any intent or desire to utilize the protections of the FMLA would support a finding that Mr. Rodgers failed to request FMLA leave. Sanders v. May Dept. Stores Co., 315 F.3d 940, 944-45 (8th Cir. 2003).  Although Mr. Rodgers' testimony varies on this crucial point, plaintiffs have challenged the accuracy of Streety's December 4, 2000, letter insofar as it memorializes a rejection of FMLA leave. Plaintiffs have raised a genuine issue of fact regarding whether Mr. Rodgers withdrew his request for FMLA leave which cannot be resolved in the summary judgment context.

Assuming plaintiff provided "notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave" (29 C.F.R. § 825.302(c)), the next issue is whether plaintiff submitted all necessary documentation in a timely manner.  It is undisputed that defendant required that a medical certification be provided within 15 days of plaintiff's initial request for leave. Decl. of George Kargianis, Ex. 8.  Because of confusion related to Mr. Rodgers' alleged withdrawal of his request for FMLA leave, defendant extended the deadline for submission of the medical certification from December 4, 2000, to December 13, 2000.  Decl. of Ralph Pond, Ex. N.  Despite this extension, plaintiff did not provide the required certification and was terminated on December 14, 2000.   Decl. of Ralph Pond, Ex. C.  The next day, Rodgers called Streety and told him that he had the necessary paperwork but had been unable to fax it because of a snowstorm in Chicago. Dep. of William Streety at 153:15-154:13.  Streety told Rodgers that his termination letter had already been sent out, but advised him to get his certification in as soon as possible and "see what the company decided to do on it." Dep. of William Streety at 154:20-155:3.  Plaintiff provided the medical certification via fax on December 18, 2000.  He was not reinstated. Decl. of Ralph Pond, Ex. R.

Plaintiffs contend that Mr. Rodgers' non-compliance with the 15-day requirement should be excused because he provided the FMLA certification "as soon as reasonably possible under the particular facts and circumstances" as provided in 29 C.F.R. § 825.311(b).  There is no evidence in the record to support such a contention.  Plaintiff had been in Chicago for a number of days, if not weeks, at the time of his termination and there is no explanation for why he could not obtain and provide the medical certification in a timely manner.  Plaintiffs also contend that defendant violated the FMLA by placing him on absent-without-leave status as of November 29, 2000.  Mr. Rodgers was, however, given an opportunity to regain his FMLA status and avoid the consequences of his unexcused absences by providing the medical certification on or before December 13, 2000. He did not do so and was terminated pursuant to company policies of general application.  Decl. of Patrick Kenny, Ex. D.

Plaintiff failed to meet his obligations under the FMLA.  At the time of his termination, all the employer knew was that its employee had requested leave to care for a sick parent.  Despite a valid request for additional information, plaintiff failed to provide any supporting documentation that would have allowed defendant to determine whether his mother had a serious health condition under the statute, whether plaintiff's assistance was necessary, or whether the leave was actually FMLA-qualifying.  His termination for absences not protected by the FMLA was not a violation of the statute.

**VI. Negligent and Intentional Infliction of Emotional Distress**

Plaintiffs have failed to show that defendant's conduct was improper, negligent, or extreme and outrageous.  Their emotional distress claims fail as a matter of law.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT           -13-

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiffs.

DATED this 13th day of March, 2006.

*[signature]*
Robert S. Lasnik
United States District Judge